STATE OF NEBRASKA, APPELLEE, V. DONALD L. GREEN,
JR., APPELLANT.

348 N.W.2d 429

Filed April 20, 1984.  No. 83-525.

Roy A. Sheaff and John F. Sheaff of Sheaff Law
Offices, for appellant.

Paul L. Douglas, Attorney General, and Henry M.
Grether III, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS,
CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Defendant was convicted, after trial, in the mu-
nicipal court of the city of Lincoln of operating his
motor vehicle while under the influence of intoxi-
cating liquor and of speeding.  He was sentenced to
7 days in the city jail and fined $200 on the intoxica-
tion charge and $41 on the speeding charge.  Defend-
ant appealed to the district court for Lancaster
County, where his convictions and sentences were

affirmed. He then appealed to this court, assigning seven errors, which may be consolidated into four: (1) In the trial court's receiving in evidence results of a preliminary breath test, both initially and as corroboration; (2) In the trial court's receiving in evidence the opinion of the arresting officer as to defendant's intoxication; (3) In the trial court's receiving in evidence radar results with regard to the speeding violation; and (4) In the error of the trial court's failing to dismiss both counts because of failure of proof. For the reasons set out below we affirm.

The evidence shows that on November 12, 1982, at 1:30 a.m., Nebraska State Patrol Trooper Keith Rodaway observed the defendant traveling westbound on Highway 2 in Lancaster County where the speed limit was 55 m.p.h. The trooper testified he obtained a radar reading of 75 m.p.h. and stopped the defendant's vehicle after a 40-block chase. The defendant experienced difficulty in producing a driver's license, spoke in a slurred and incomplete manner, and a strong odor of alcohol was detected coming from the defendant's vehicle. The trooper, Rodaway, observed defendant's walk back to the trooper's car, balancing himself all the way on first his own car and then the trooper's. The night was rainy and windy, and for that reason the officer did not conduct any walking, balancing, or coin tests at the stop.

After defendant was in his vehicle the trooper continued to smell the odor of alcohol coming from defendant and conducted the following speech and dexterity tests: (1) Reciting the alphabet; (2) Counting backward by ones from 100 and changing at a point to fives; and (3) Touching fingers to thumb in a specific sequence while counting aloud. The defendant passed the first test but had difficulty on the other two. The trooper then administered a preliminary breath test, using an Alco-Sensor II digital readout device, obtaining a readout of .21. Defendant was

placed under arrest and transported to the County-City Building in Lincoln for further chemical analysis. At the County-City Building the defendant was unable or unwilling to blow continuously into the machine and an adequate sample could not be obtained for further testing.

At the trial in the municipal court, the officer testified as to the results of the preliminary breath test and also, at length, as to his observance of the defendant at the time of the arrest and thereafter.

The first general assignment of error is the admission in evidence of the preliminary breath test. Neb. Rev. Stat. § 39-669.08(3) (Cum. Supp. 1982) provides that a law enforcement officer may require a driver to submit to a preliminary test if the officer has reasonable grounds to believe that person "has alcohol in his or her body, or has committed a moving traffic violation . . . . Any person . . . whose preliminary breath test results indicate an alcohol content of ten-hundredths of one per cent or more shall be placed under arrest . . . ."

The evidence regarding the preliminary test was offered and received at the trial to show the circumstances leading to the arrest and the eventual transporting of Green to the police station where Green would be required to take a further chemical test to determine his blood alcohol level. The administering of the preliminary breath test was proper under § 39-669.08(3) and *State v. Gerber*, 206 Neb. 75, 291 N.W.2d 403 (1980).

Before the results of a preliminary test can be received, foundation evidence must be established following the requirements of Neb. Rev. Stat. § 39-669.11 (Reissue 1978), including the requirements that the method of performing the preliminary test has been approved by the Nebraska Department of Health and that the testing officer possess a valid permit issued by the Department of Health for such purpose. *State v. Gerber, supra.*

The record contains a copy of a class C permit

issued to the trooper on December 8, 1981, for direct breath testing on an Alco-Sensor II device following the fuel cell analysis method. This permit was in effect at all times pertinent to this case. The trooper also followed a checklist technique as designated in the rules and regulations relating to analysis for the determination of alcoholic content of body fluids and of breath as adopted by the Department of Health (commonly referred to as Rule 3). There was ample foundation testimony by the trooper to warrant the admission of the test for limited purposes.

In this connection it should be noted that the "preliminary test" of § 39-669.08(3) need not be a "chemical test" necessary for conviction under Neb. Rev. Stat. § 39-669.07 (Cum. Supp. 1982), which states, "It shall be unlawful for any person to operate . . . any motor vehicle . . . when that person has ten-hundredths of one per cent or more by weight of alcohol in his or her body fluid *as shown by chemical analysis* of his or her blood, breath, or urine." (Emphasis supplied.) Rule 3 of the "Rules and Regulations Relating to Analyses for the Determination of Alcohol Content of Body Fluids and of the Breath Under the Driving While Intoxicated Law," as adopted by the Department of Health, sets out three categories of permits issued by the health department: (1) A class A permit, which is a permit to perform chemical tests "by an approved chemical laboratory method(s)"; (2) A class B permit, which is a permit to perform chemical tests by "approved method(s) with a specifically designed testing device(s)"; and (3) A class C permit, which is a permit "to operate an approved direct breath testing device to perform preliminary breath tests." Only tests taken pursuant to class A and B permits are such a "chemical test" as to comport with the requirement of § 39-669.08(1) and a "chemical analysis" as to comport with § 39-669.07. The "preliminary test" referred to in § 39-669.08(3) is a different procedure and not such a "chemical test" or

"chemical analysis" as to satisfy requirements for a conviction under § 39-669.07. The preliminary test does, however, serve the specific functions set out, and the result of that test was properly received in evidence for the limited purpose of showing the basis for the arrest of defendant.

The procedural problem arises in this case from the fact that at the station defendant was unable or unwilling to blow enough of his breath into the chemical testing instrument to permit that instrument to operate properly. At one point this testing instrument did print out a reading, but the trial court properly sustained defendant's foundational objection to that printout when it was determined that the printout was obtained only after a second breathing effort by defendant, without an intervening recalibration of the testing instrument as required by Rule 3 procedures. Once this ruling was made, and if defendant did not challenge the validity of his arrest, it would have been proper to strike the result of the preliminary breath test, but defendant made no such motion to strike and there was no necessity for the court to intervene on its own motion.

The fact that the preliminary test remained before the court, however, does not constitute error requiring reversal of this case. In matters tried to a court without a jury, it is settled law that if irrelevant evidence, even if prejudicial, is received and not stricken from the record, it is presumed that the trial court did not consider such evidence. As stated in *Barber v. Barber*, 207 Neb. 101, 115, 296 N.W.2d 463, 472 (1980),

> We have often stated that a presumption arises that the trial court, in trying a case without a jury, will consider only such evidence as is competent and relevant and this court will not reverse a case so tried because evidence was erroneously admitted where there is other material, competent, and relevant evidence sufficient to sustain the trial court's judgment.

See, also, *Sinclair v. United States*, 279 U.S. 749, 49 S. Ct. 471, 73 L. Ed. 938 (1929).

In this case the evidence adduced at the trial, other than the preliminary breath test, was clearly sufficient to sustain defendant's conviction for driving while under the influence of intoxicating liquor. The precise nature of the conviction should be noted —defendant was *not* convicted of operating a motor vehicle when he had "ten-hundredths of one per cent or more by weight of alcohol in his or her body fluid," as forbidden by § 39-669.07, but of driving under the influence. See *State v. Jablonski*, 199 Neb. 341, 258 N.W.2d 918 (1977).

The record in this case shows that the defendant was stopped for speeding by the trooper, who then observed impaired finger dexterity and coordination while the defendant was obtaining his license and registration. A strong odor of alcohol came from defendant's vehicle and was later detected from defendant's person, along with slurred, incomplete speech and the necessity of defendant to balance himself by touching his vehicle when walking back to the trooper's cruiser. The defendant was unable to communicate the route he had just traveled, gave two different addresses to the trooper, and performed poorly on two of the field tests. The trooper also saw defendant walk in an uncoordinated and swaying fashion at the County-City Building. There was ample evidence to support the arresting officer's conclusion that defendant was driving while under the influence of alcohol.

The defense presented evidence contrary to the trooper's testimony, and explanations were given by the defendant and his girl friend. Those factual questions were resolved by the trial court against the defendant. In determining the sufficiency of the evidence to sustain a criminal conviction, this court does not resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence, and a

verdict rendered thereon must be sustained if, taking the view of such evidence most favorable to the State, there is sufficient evidence to support it. *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984).

The evidence previously discussed also shows that defendant's contention that the trial court erred in receiving the trooper's opinion as to whether the defendant was under the influence of alcohol is without any merit. The arresting officer testified that he had attended patrol schools on the identification of persons under the influence of alcohol; that he had observed people in a social situation drinking alcohol, and has observed their reactions, on many occasions; and that in the preceding 3 years he had made more than 90 drunk driving arrests. Testimony by such a witness based on personal observation as to acts done and words spoken by a defendant is a sufficient basis for an opinion that the defendant was under the influence of intoxicating liquor. *State v. Betts*, 210 Neb. 348, 314 N.W.2d 257 (1982); *State v. Jablonski, supra*. Even without the opinion of the arresting officer, the facts as presented were clearly sufficient to allow the fact finder to conclude that defendant was operating his vehicle while under the influence of intoxicating liquor. *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982).

Finally, the defendant challenges the sufficiency of evidence for the speeding conviction. Evidence of the readings of radar equipment designed to determine the speed of moving vehicles is admissible as evidence of speed if a sufficient foundation is laid as to the accuracy of the equipment in operation. *Peterson v. State*, 163 Neb. 669, 80 N.W.2d 688 (1957); *State v. Snyder*, 184 Neb. 465, 168 N.W.2d 530 (1969). The uncontroverted evidence is that the trooper was qualified to operate the radar equipment, which was working properly and accurately on the date in question. Defendant argues other points not covered in his assignments of error. Under our rules we do not consider such arguments.

There is no merit in any of the contentions advanced by defendant. The judgments and convictions are affirmed in their entirety.

AFFIRMED.